**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **STANLEY RODRIGUEZ** | : | **NO. 07-709-01** |

## ORDER & MEMORANDUM

### ORDER

   **AND NOW**, this 17th day of November, 2008, upon consideration of defendant's Motion

for *In Camera* Review (Document No. 98, filed October 17, 2008) and the Government's

Response to Defendant's Motion for an *In Camera* Review (Document No. 100, filed October

29, 2008), **IT IS ORDERED** that defendant's Motion for *In Camera* Review is **DENIED**.

### MEMORANDUM

## I.   INTRODUCTION

   On November 14, 2007, a Grand Jury in this District returned an Indictment against the

defendant, Stanley Rodriguez, charging him with one count of possession with intent to

distribute cocaine and one count of possession with intent to distribute cocaine within 1000 feet

of a school. Defendant's trial is scheduled for December 8, 2008.

   Presently before the Court is defendant's Motion for *In Camera* Review which concerns

the personnel files of certain of the government's law enforcement witnesses. Defendant requests

that the Court examine these files "to determine whether any information should be disclosed to

the defense for its use at trial." (Def. Mot. ¶ 5). Although defendant does not cite any legal

authority to support his request for *in camera* review, any right to the information contained in

the government witnesses' personnel files must flow, if at all, from the due process protections of

Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. For the reasons set forth below, the

Court concludes that defendant has not made a plausible showing that personnel files contain

Brady material.  Accordingly, defendant's Motion for *In Camera* Review is denied.

## II.      FACTUAL AND PROCEDURAL BACKGROUND[1]

On September 9, 2007, three plain clothes officers of the Philadelphia Police

Department's Narcotics Field Unit, Violence Response Team, went to 3500 North A Street to

investigate narcotics activity.  The officers were stopped behind a red Toyota Camry that was

double-parked in the driving lane when they observed defendant hand a black book bag to the

driver through the car window.  The driver reached behind himself, retrieved a plastic-covered,

brick-shaped object, placed it in the book bag, and returned it to defendant.  Defendant initially

walked south on A Street, but after receiving a signal from a male who had spotted the police, he

abruptly changed direction, threw the book bag onto a garage roof at 3520 North A Street, and

ran north toward Venango Street.  The police officers pursued defendant.  One officer remained

at the garage, while another chased defendant on foot.  The third officer pursued defendant in the

undercover vehicle.

Defendant was apprehended at 3539 North Water Street.  Thereafter, a uniformed officer

who responded to the scene after hearing police radio transmissions climbed onto the roof of the

garage and recovered the black book bag.  Found inside the book bag were two (2) kilogram

---

[1]The facts in the first two paragraphs derive from the government's description of the events underlying defendant's arrest. (See Gov't Resp. at 4-5; id. Ex. D). The Court recites these facts for contextual purposes only and does not make any specific findings.

"bricks" of cocaine weighing a total of approximately 2,006 grams.  The scene of the crime was within 1,000 feet of the Cramp School at 3449 North Mascher Street (K-6) and of the St. Hugh of Cluny School at Mascher and Tioga Streets (K-8).

On November 14, 2007, a Grand Jury in this District returned an Indictment charging the defendant with the following crimes: Count One – possession with intent to distribute approximately 2,006 grams of cocaine on or about September 9, 2007 in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); Count Two – possession with intent to distribute approximately 2,006 grams of cocaine on or about September 9, 2007 within 1,000 feet of a school, the Cramp School, a public elementary school, located at 3449 North Mascher Street in Philadelphia, and the St. Hugh of Cluny School, an elementary school of the Archdiocese of Philadelphia, located at Mascher and Tioga Streets, in violation of 21 U.S.C. § 860. At his arraignment on December 5, 2008, defendant entered a plea of not guilty on both counts.

On July 9, 2008, defendant, through counsel, informed the government and the Court that he wished to change his plea to guilty. Immediately upon receiving this information, the government, by letter dated July 10, 2008, disclosed a list of Internal Affairs Division ("IAD") investigations which resulted from allegations of misconduct against several of the government's law enforcement witnesses. (Mot. to Continue Trial Ex. B, Document No. 82, filed July 11, 2008). At the time, the government was unable to advise defendant of the results of the IAD investigations because final reports had not been received from the Philadelphia Police Department. (Id.). Based on this partial disclosure, defendant filed a Motion to Continue Trial on July 11, 2008 to allow the defense to investigate the impact of the IAD investigations on the credibility of the government witnesses. The Court granted this motion. (Order of July 14, 2008, Document No. 87).

On August 5, 2008, the government supplemented its July 10, 2008 letter to include the IAD findings with regard to each of the eleven closed investigations. (Gov't Resp. Ex. A). For the two investigations which remained open, the government was not able to provide findings. (Id.). The government determined that only one IAD determination reflected negatively on the credibility of the officer under investigation. (Id.). Consequently, the government has decided not to call that officer to testify at defendant's trial. (Id. at 6 n.1). Not satisfied by the government's representations, defense counsel requested an opportunity to personally review the IAD records relating to each law enforcement witness. (Id. Ex. B). The government declined defendant's request (Id. Ex. C), and defendant responded by filing the present motion.

## III.   LEGAL STANDARD

Under Brady v. Maryland, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. 83, 87 (1963). Because "the jury's estimat[ion] of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence," impeachment evidence that is material and favorable falls under the Brady rule and must be disclosed. United States v. Bagley, 473 U.S. 667, 676 (1985) (citing Giglio v. United States, 405 U.S. 150, 154 (1972) and Napue v. Illinois, 360 U.S. 264, 269 (1959)). The materiality of evidence is judged according to its effect on the outcome of the trial. The Supreme Court has stated that "[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  Bagley, 473 U.S. at 682, 685; see also Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987).

The Brady rule did not create "a general constitutional right to discovery" in criminal

cases. <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977). To the contrary, <u>Brady</u> imposes

disclosure obligations on the prosecution where the suppression of material, exculpatory

evidence would violate the defendant's due process right to a fair trial. <u>Bagley</u>, 473 U.S. at 682,

675. "In the typical case where a defendant makes only a general request for exculpatory material

under <u>Brady v. Maryland</u>, it is the State that decides which information must be disclosed. Unless

defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the

court's attention, the prosecutor's decision on disclosure is final." <u>Ritchie</u>, 480 U.S. at 59

(internal citations omitted).

Where a defendant suspects that the government has withheld <u>Brady</u> evidence, he may

move the court for an *in camera* inspection of the materials in question. <u>See</u> <u>Ritchie</u>, 480 U.S. at

60; <u>United States v. Dent</u>, 149 F.3d 180, 191 (3d Cir. 1998). To obtain an *in camera* inspection,

the defendant "must at least make a 'plausible showing' that the inspection will reveal material

evidence." <u>Ritchie</u>, 480 U.S. at 59 n.15; <u>Riley v. Taylor</u>, 277 F.3d 261, 301 (3d Cir. 2001),

<u>reinstated by</u> 277 F.3d 261, 273 n.1 (3d Cir. 2001) (en banc). Under this standard, "[m]ere

speculation is not enough." <u>Riley</u>, 277 F.3d at 301.

**IV.     DISCUSSION**

In the current motion, defendant requests that the Court review the IAD investigation

records for the government's witnesses "to determine whether any information should be

disclosed to the defense for its use at trial in this matter." (Def. Mot. ¶ 5). Defendant does not

specify what, if any, <u>Brady</u> material he expects the Court to find in the IAD records. Defendant

also does not allege that the government has failed in any way to carry out its disclosure

obligations under <u>Brady</u>. Thus, unless such records necessarily contain <u>Brady</u> information,

defendant has failed to make a plausible showing that an *in camera* inspection will reveal

evidence which should be disclosed. See Riley, 277 F.3d at 301.

Defendant's motion is limited to two IAD investigations which were open at the time the government made its August 5, 2008 disclosure. (Def. Mot. ¶ 5; Gov't Resp. Ex. A). One of the investigations concerns a police officer who will not be called to testify by the government. (Id.; Gov't Resp. at 6 & n.1). The other concerns an allegation of an improper search against three of the officers who were involved in defendant's arrest and who may be called to testify. (Gov't Resp. Ex. A). To be material and exculpatory, and therefore subject to disclosure under Brady, the IAD file for this investigation must contain information which could be used to impeach the testimony of the three officers should they testify at trial. See Bagley, 473 U.S. at 676. Nothing on the face of an improper search allegation suggests that the IAD records of the resulting investigation contain information which could be used for impeachment. Because such records do not necessarily contain impeachment information, defendant's request for an *in camera* review is denied for failure to make any plausible showing that the materials to be inspected contain Brady evidence.

The government stated that it is aware of its obligations under Brady and Giglio and has complied with those obligations. (Gov't Resp. at 5; id. Ex. C). The Court finds no evidence to the contrary in this case. It bears noting, however, that Brady establishes an affirmative duty to seek out material, exculpatory evidence which is in "the possession of some arm of the state" as well as a continuing obligation to disclose such information. United States v. Perdomo, 929 F.2d 967, 970-71 (3d Cir. 1991); see also United States v. Thornton, 1 F.3d 149, 158 (3d Cir. 1993). Under this principle, the government is responsible for all information contained in the law enforcement witnesses' personnel files and any subsequent findings issued by the IAD. If any such material contains Brady or Giglio information, it must be turned over to defendant.

V.      **CONCLUSION**

For the foregoing reasons, defendant's Motion for *In Camera* Review is denied.


**BY THE COURT:**


 **/s/ Honorable Jan E. DuBois**
     **JAN E. DUBOIS, J.**