**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| | **NO.  07-709** |
| **v.** | |
| | **CIVIL ACTION** |
| **STANLEY RODRIGUEZ** | **NO. 13-4818** |

**DuBois, J.**                                                                                         **March 19, 2015**

# M E M O R A N D U M

## I.    INTRODUCTION

On October 15, 2009, defendant Stanley Rodriguez was convicted of one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841, and one count of possession with intent to distribute cocaine near a school in violation of 21 U.S.C. § 860. Rodriguez was thereafter sentenced, inter alia, to 120 months imprisonment and 8 years of supervised release. Presently before the Court are two Motions filed by Rodriguez: (1) a Motion for New Trial Pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33 Motion"); and (2) in the alternative, a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion").[1] The Motions arise out of purported newly discovered evidence that five Philadelphia police officers who were involved in Rodriguez's arrest, and two of the five witnesses who testified at his trial, have since been indicted on federal corruption charges involving racketeering, robbery, extortion, kidnapping, and drug dealing.

For the reasons set forth below, the Motions are denied without an evidentiary hearing.

---

[1]          Rodriguez notes that he simultaneously filed a Motion pursuant to 28 U.S.C. § 2255 in order to comply with the one-year statute of limitations for the filing of such a motion. (Def.'s Rule 33 Mot. 2, n.1.) Rodriguez's § 2255 Motion incorporates the same arguments raised by Rodriguez in his Rule 33 Motion and seeks the same relief.

## II.     BACKGROUND

### A.  Rodriguez's Trial

On November 14, 2007, a Grand Jury in this District returned a two-count Indictment charging Rodriguez with the following crimes: Count One – possession with intent to distribute cocaine in violation of 21 U.S.C. § 841; and Count Two – possession with intent to distribute cocaine near a school in violation of 21 U.S.C. § 860. On April 10, 2008, the Government filed an Information pursuant to 21 U.S.C. § 851, to establish for the record that Rodriguez had a prior conviction for possession of a controlled substance with intent to distribute. The filing of the Information resulted in increased punishment — a ten-year mandatory minimum sentence of imprisonment. (Gov't Resp. to Def.'s Rule 33 Mot. 7.); see 21 U.S.C. §§ 841, 851.

Rodriguez's three-day trial began on October 13, 2009. The Government called five witnesses, all of whom were members of the Philadelphia Police Department's Narcotics Field Unit at the time: Officers Perry Betts; Sean O'Malley; Brian Reynolds; Robert Billips; and Sergeant Joseph McCloskey.

Officers Betts and O'Malley testified that, on September 9, 2007, while on patrol in an unmarked car in North Philadelphia, they observed Rodriguez conversing with the driver of a Toyota Camry, which was double-parked in the driving lane. (Gov't Resp. to Def.'s Rule 33 Mot. 2; Def.'s Rule 33 Mot. 7–8.) Officers Betts and O'Malley testified that they watched as Rodriguez reached into the driver's side of a Mercury Grand Marquis that was parked on the side of street and retrieved a black book bag. (Gov't Resp. to Def.'s Rule 33 Mot. 3; Def.'s Rule 33 Mot. 7–8.) Rodriguez then handed the book bag to the driver of the Camry, who reached into the back seat of the car, retrieved two plastic-covered, brick-shaped objects, placed them in the bag, and returned the bag to Rodriguez. (Gov't Resp. to Def.'s Rule 33 Mot. 3; Def.'s Rule 33 Mot.

2

8–9.) As Rodriguez began to walk away, he was alerted to the presence of Officers Betts, O'Malley, and Norman[2] by a bystander, and Rodriguez began to flee. (Gov't Resp. to Def.'s Rule 33 Mot. 3; Def.'s Rule 33 Mot. 8–9.) Officers Betts, O'Malley, and Norman gave chase. (Gov't Resp. to Def.'s Rule 33 Mot. 3; Def.'s Rule 33 Mot. 8–9.) Before Rodriguez was apprehended, Officer O'Malley observed him toss the book bag onto the roof of a garage at 3520 North A Street, where it was later recovered by Officer Reynolds with the assistance of Officers Norman, Thomas Liciardello, and Jeffrey Walker. (Gov't Resp. to Def.'s Rule 33 Mot. 3–5; Def.'s Rule 33 Mot. 10–12.) Officer O'Malley was also present but did not personally retrieve the book bag from the roof. (Gov't Resp. to Def.'s Rule 33 Mot. 3–5; Def.'s Rule 33 Mot. 10–12.) Officer Billips testified that he and Officer Margaret McGrory were called to the scene to canvass the area for the driver of the Camry, but they were unsuccessful in locating the vehicle. (Def.'s Rule 33 Mot. 11.) Sergeant McCloskey, the supervisor of the Narcotics Field Unit, testified that he was summoned to the scene and arrived after the book bag was recovered from the roof of the garage. (Gov't Resp. to Def.'s Rule 33 Mot. 6.) Subsequent laboratory testing confirmed that the book bag contained two kilograms of cocaine. The scene of the crime was within 1,000 feet of the Cramp School at 3449 North Mascher Street (K-6) and of the St. Hugh of Cluny School at Mascher and Tioga Streets (K-8).

Rodriguez did not present any evidence at trial. His trial strategy consisted of attacking the credibility of the officers' story through cross-examination and closing argument. (Def.'s Rule 33 Mot. 13.)

At the conclusion of the trial on October 15, 2009, the jury convicted Rodriguez on both counts of the Indictment. On October 13, 2010, the Court sentenced Rodriguez, inter alia, to the

---

[2] Norman was a passenger in the unmarked police vehicle, but he did not testify at Rodriguez's trial.

mandatory minimum sentence of 120 months imprisonment and sixteen years of supervised release.

### B. Direct Appeal

Rodriguez raised two issues on direct appeal: (1) a claim under Brady v. Maryland, 373 U.S. 83 (1963), that the Government violated his due process rights by failing to produce Internal Affairs Department ("IAD") files relating to the officers of the Narcotics Field Unit who were involved in his arrest; and (2) a challenge to the Court's calculation of the mandatory minimum term of supervised release.

The U.S. Court of Appeals for the Third Circuit affirmed Rodriguez's conviction, but remanded for resentencing after concluding that this Court had inadvertently miscalculated the mandatory minimum term of supervised release.[3] See United States v. Rodriguez, 489 F. App'x 528, 531 (3d Cir. 2012). In rejecting Rodriguez's Brady claim, the Third Circuit concluded that the only relevant IAD files pertained to open investigations against Officers Betts and O'Malley, and that Rodriguez had failed to make a plausible showing that those files contained Brady material because the allegations in the IAD complaints "were too remote from the facts of this case to significantly undermine the officers' credibility." Id. at 531. The Third Circuit further concluded that the evidence at issue was not material under Brady. Id.

### C. Alleged Newly Discovered Evidence

On December 3, 2012, the District Attorney of Philadelphia, R. Seth Williams, sent a letter to Philadelphia Police Commissioner Charles H. Ramsay informing him that the District

---

[3] At sentencing, the Court, relying on the Presentence Investigation Report, incorrectly determined that the mandatory minimum term of supervised release was sixteen years. The correct mandatory minimum term of supervised release under 21 U.S.C. § 860, however, was eight years. United States v. Rodriguez, 489 F. App'x 528, 531 (3d Cir. 2012). After the Third Circuit remanded for resentencing, the Court resentenced Rodriguez to eight years of supervised release. The judgment of sentence remained the same in all other respects.

Attorney's Office would no longer rely on the testimony of six Philadelphia police officers in narcotics cases: Officers Betts, Reynolds, Liciardello, Michael Spicer, John Speiser, and Lieutenant Robert Otto. (Def.'s Rule 33 Mot. 15–16.) Of those officers, only Betts, Reynolds, and Liciardello were involved in Rodriguez's arrest. The letter did not state a basis for the decision, but it was "widely reported [by the news media] . . . that the DA's Office had determined that the officers' credibility [had been] badly damaged." (Gov't Resp. to Def.'s Rule 33 Mot. 10–11.)

Officer Walker, who was marginally involved in Rodriguez's arrest,[4] was not mentioned in District Attorney Williams' December 3, 2012 letter, but following an investigation conducted by the Federal Bureau of Investigation ("FBI"), he was arrested and indicted in the U.S. District Court for the Eastern District of Pennsylvania for attempted robbery and carrying a firearm in relation to a crime of violence. (Gov't Resp. to Def.'s Rule 33 Mot. 12; Def.'s Rule 33 Mot. 17.) Walker was charged with planting drugs on a suspect in order to set him up for a false arrest so Walker could later rob him of money and drugs. (Gov't Resp. to Def.'s Rule 33 Mot. 12; Def.'s Rule 33 Mot. 17.) Walker plead guilty to the charges on February 24, 2014, and is currently awaiting sentencing. See United States v. Walker, No. 13-331 (E.D. Pa. filed June 20, 2013).

Thereafter, on July 29, 2014, Officers Betts, Reynolds, Liciardello, Spicer, Speiser, and Norman were arrested and indicted in the U.S. District Court for the Eastern District of Pennsylvania on various corruption charges involving racketeering, robbery, extortion, kidnapping, and drug dealing. (Gov't Resp. to Def.'s Request for Discovery 3 n.1.) Walker was

---

[4]     Jeffrey Walker arrived on scene after Rodriguez was apprehended, and his involvement was limited to helping Officer Reynolds get up onto the roof of the garage at 3520 North A Street to retrieve the book bag that Rodriguez had tossed there while attempting to elude the police. (Def.'s Rule 33 Mot. 11–12; Gov't Resp. to Def.'s Rule 33 Mot. 22–23.) Walker did not testify at Rodriguez's trial.

the principal cooperator against them. (Id. 6 n.3.) The Indictment charges that the former officers' illicit scheme lasted from February 2006 through November 2012. See United States v. Liciardello et al., No. 14-412 (E.D. Pa. filed July 29, 2014). Only two of the alleged overt acts charged in the Indictment predate September 9, 2007, the date of Rodriguez's arrest. See id. Officers Betts, Reynolds, Liciardello, Spicer, Speiser, and Norman have plead not guilty to the charges. Their trial began on March 16, 2015. See id.

Rodriguez filed the instant Motions pursuant to Rule 33 and § 2255 based on this "newly discovered evidence" of police corruption. According to Rodriguez, the evidence demonstrates that five of the officers who were involved in his arrest (Betts, Reynolds, Liciardello, Norman, and Walker), and two of the five witnesses who testified against him at trial (Betts and Reynolds), have now been "wholly discredited." (Def.'s Rule 33 Mot. 21.)

## III.    DISCUSSION

In his Rule 33 Motion, Rodriguez argues that he is entitled to a new trial based on the alleged newly discovered evidence of police corruption. Rodriguez further argues that the Government has violated his due process rights under Brady v. Maryland by failing to turn over IAD files relating to the officers involved in his arrest. Rodriguez has also requested extensive discovery from the Government in connection with his motion for a new trial. In the alternative, Rodriguez has filed a Motion pursuant to 28 U.S.C. § 2255 requesting the same relief. Rodriguez has requested that the Court grant an evidentiary hearing on the issues presented by both Motions.

The Court addresses each Motion in turn.

## A.  RODRIGUEZ'S RULE 33 MOTION FOR A NEW TRIAL

### 1.  Claim of Newly Discovered Evidence

Federal Rule of Criminal Procedure 33(b)(1) requires that a motion for a new trial based on newly discovered evidence be filed within three years of a finding of guilt. Rodriguez was convicted on October 15, 2009. He thus had until October 15, 2012 to file the instant Rule 33 Motion, but he did not do so until August 19, 2013. Accordingly, that part of Rodriguez's Rule 33 Motion which seeks a new trial on the ground of newly discovered evidence is untimely.

Although Rodriguez argues that the deadline should be extended under Federal Rule of Civil Procedure 45(b)(1)(B) due to "excusable neglect," the Court need not decide this issue because, even assuming arguendo that Rodriguez's Rule 33 Motion is timely, the alleged newly discovered evidence is insufficient to warrant the granting of the Motion.

Rule 33 motions are disfavored and should be granted only in exceptional cases. United States v. Miller, No. 10-663, 2012 WL 2094068, at *1 (E.D. Pa. June 11, 2012). Before a district court may order a new trial based on newly discovered evidence, a defendant must satisfy five requirements:

> (1) The evidence must be in fact, newly discovered, i.e., discovered since the trial;
> (2) Facts must be alleged from which the court may infer diligence on the part of the [defendant];
> (3) The evidence relied on, must not be merely cumulative or impeaching;
> (4) It must be material to the issues involved; and
> (5) It must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

United States v. Kelly, 539 F.3d 172, 181–82 (3d Cir. 2008).

Rodriguez has failed to establish that the evidence on which he relies is of such a nature that it would "probably produce an acquittal" at a new trial because, as explained below, the evidence would not be admissible, either to impeach Government witnesses or as substantive evidence. See, e.g., United States v. Parker, 903 F.2d 91, 102 (2d Cir.

1990) ("In order to obtain a new trial on the ground of newly discovered evidence, the

moving defendant must show, <u>inter alia</u>, that the new evidence would 'probably lead to

an acquittal. . . .' This principle presupposes, of course, that the proffered new 'evidence'

would be admissible at the new trial."); <u>United States v. Byrne</u>, 451 F. Supp. 109, 112

(E.D. Pa. 1978) (denying Rule 33 motion because, <u>inter alia</u>, alleged newly discovered

evidence would not be admissible at new trial); <u>United States v. St. Vallier</u>, No. 07-

00613, 2013 WL 5937006, at *4 (D.N.J. Oct. 31, 2013) (same).

### a) The Alleged Newly Discovered Evidence Would Not Be Admissible to Impeach Government Witnesses at a New Trial

The Government has represented that if a new trial were held, it would not call

Officers Perry Betts and Brian Reynolds, both of whom are currently under federal

indictment, and Sergeant Joseph McCloskey as witnesses. (Gov't Resp. to Def.'s Request

for Discovery 3, 14–15.) Instead, the Government would rely upon the testimony of

Officer Sean O'Malley, who was present and observed all of the relevant events on the

day of Rodriguez's arrest, and Officer Robert Billips, who was called to the scene to

search for the driver of the Toyota Camry.[5] (<u>Id.</u>)

---

[5]     Rodriguez argues that the Government could not establish a proper chain of custody without the testimony of Brian Reynolds, the officer who actually retrieved the book bag from the roof of the garage at 3520 North A Street, and Perry Betts, the officer who took custody of the book bag after it was retrieved. (Def.'s Reply Mem. Law Supp. Rule 33 Mot. 5–6.) The Court disagrees. The Third Circuit has "long rejected the proposition that evidence may only be admitted if a 'complete and exclusive' chain of custody is established." <u>United States v. Rawlins</u>, 606 F.3d 73, 82 (3d Cir. 2010) (citation omitted). "To establish a chain of custody sufficient to make evidence admissible, the proponent 'need only prove a rational basis from which to conclude' that the evidence is what the party claims it to be." <u>Id.</u> The testimony of Officer Sean O'Malley would be sufficient to satisfy that standard because, as O'Malley testified at trial, he observed all of the relevant events on September 9, 2007, including the state of the book bag both before and after it was thrown onto the roof. (<u>See</u> Trial Tr., October 14, 2009, 128–36.)

If the Government were to call only Officers O'Malley and Billips at a new trial, the alleged newly discovered evidence of police corruption on which Rodriguez relies would not be admissible to impeach either of them because the evidence does not call into question the credibility of either officer; neither Officer O'Malley nor Officer Billips has been indicted, nor have they been implicated in the corruption scandal involving the other officers. Rodriguez has not cited any case law, nor has the Court found any, supporting the proposition that a witness may be impeached by reference to the alleged misconduct of others where there is no evidence of that witness's involvement in the misconduct. See Fed. R. Evid. 608(b) ("[T]he court may, on cross-examination, allow [specific instances of conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about.") (emphasis added).

Moreover, even if the evidence was admissible to impeach Officers O'Malley and Billips, evidence that is "merely impeaching" does not provide a basis for the granting of a motion for a new trial unless there is "a strong exculpatory connection between the newly discovered impeachment evidence and the charge against the defendant, or . . . the new evidence totally undermines critical evidence of the defendant's guilt." United States v. Quiles, 618 F.3d 383, 395 (3d Cir. 2010). Rodriguez has not satisfied this high standard because the evidence of police misconduct on which he relies does not involve any alleged wrongdoing in his case.[6] Thus, even if the evidence was admissible to

---

[6]     The Court notes that Jeffrey Walker — the principal cooperator in the federal case against former Officers Betts, Reynolds, Liciardello, Spicer, Speiser, and Norman — has represented to the Government that he has no reason to believe that Rodriguez's arrest was tainted in any way. (Gov't Resp. to Def.'s Request for Discovery, 6 n.3.) Moreover, the federal case does not involve any allegations of wrongdoing in Rodriguez's case. (Id.)

impeach Government witnesses at a new trial, it does not warrant the granting of

Rodriguez's Rule 33 Motion.

> **b) The Alleged Newly Discovered Evidence Would Not Be Admissible as Substantive Evidence Under Federal Rule of Evidence 404(b)**

Rodriguez contends that the newly discovered evidence of police corruption

relating to Officers Betts, Reynolds, Liciardello, Spicer, Speiser, Norman, and Walker

would be admissible as substantive evidence under Federal Rule of Evidence 404(b). See

Fed. R. Evid. 404(a), (b) ("Evidence of a crime, wrong, or other act is not admissible to

prove a person's character in order to show that on a particular occasion the person acted

in accordance with the character[, but] may be admissible for another purpose, such as

proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of

mistake, or lack of accident."). According to Rodriguez, the newly discovered evidence

shows "knowledge, opportunity, and plan" on the part of the officers involved in his

arrest, and is admissible to "show that . . . Rodriguez was probably another target of the

officers' conspiracy." (Mem. Law Supp. Def.'s Discovery Requests 13–14.) The Court

rejects this argument.

In order for "reverse 404(b) evidence"[7] to be admissible, the evidence must:

"(1) have a proper evidentiary purpose[,] (2) be relevant under Rule 402, and (3) not be

substantially outweighed by Rule 403 concerns, such as confusion of the issues,

misleading the jury, delay or waste of time." United States v. Ross, No. 05-398, 2007 WL

2571620, at *17 (E.D. Pa. Aug. 31, 2007). "Just as evidence proffered pursuant to Rule

---

[7]     Rule 404(b) evidence is "typically used by prosecutors to implicate a defendant." United States v. Farrington, 58 F. App'x 919, 924 (3d Cir. 2003). When a defendant offers exculpatory evidence under Rule 404(b), it is characterized as "reverse 404(b) evidence" because the "evidence is [being] used to exonerate rather than to incriminate a defendant." United States v. Ross, No. 05-398, 2007 WL 2571620, at *17 (E.D. Pa. Aug. 31, 2007).

404(b) may not be used as improper evidence of character, so too, reverse 404(b) evidence must not be used to show propensity." Id. (citing U.S. v. Williams, 458 F.3d 312, 315-16 (3d Cir. 2006)).

The evidence on which Rodriguez relies would not be admissible under Rule 404(b). Rather than coming forward with any evidence that these officers committed misconduct in his case, Rodriguez endeavors to use evidence of these officers' alleged misconduct in other cases to support the inference that because the officers planted drugs on others, they must have committed those same bad acts in his case. "This is exactly the type of propensity evidence that Rule 404(b) prohibits." Id. at *18; see also United States v. Caldwell, 760 F.3d 267, 277 (3d Cir. 2014) ("[O]ur decisions are so emphatic in requiring the proponent and the trial judge to articulate, with precision, a chain of inferences that does not contain a propensity link."). Because the only connection present in this case between the alleged newly discovered evidence and Rodriguez's case is a "propensity link," Rodriguez has failed to show a proper evidentiary purpose under Rule 404(b). Caldwell, 760 F.3d at 277; see also Savage v. Dist. Attorney of Cnty. of Philadelphia, 116 F. App'x 332, 337 (3d Cir. 2004) (evidence of misconduct committed in other cases by non-testifying police officer who was involved in defendant's arrest inadmissible under Rule 404(b) because, inter alia, "[t]he inference the jury would be asked to draw . . . is that because [the officer] previously gave false testimony about the facts of a narcotics possession arrest on prior occasion(s), he fabricated [the defendant's] arrest [on this occasion]").

Even if Rodriguez had succeeded in showing a proper evidentiary purpose for the alleged newly discovered evidence, which he has failed to do, the evidence would be

properly excluded under Rule 403. First, at this stage, the allegations against Officers

Betts, Reynolds, Liciardello, Spicer, Speiser, and Norman remain unproven, as none of

those officers has yet been convicted of a crime.[8] Second, there is no evidence that any of

those officers committed any misconduct in Rodriguez's case. Third, the connection of

this evidence to Rodriguez's case is made even more tenuous on account of the fact that

only two of the alleged overt acts charged in the Indictment against those officers predate

September 9, 2007, the date of Rodriguez's arrest. Finally, allowing the admission of this

evidence would risk turning Rodriguez's new trial into a mini-trial of the officers'

conduct in other cases, which would distract the jury from the material issues involved.

Under such circumstances, the Court concludes that the probative value of the evidence

would be "substantially outweighed by a danger of . . . unfair prejudice, confusing the

issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence." Fed. R. Evid. 403.

      In sum, the alleged newly discovered evidence on which Rodriguez relies is not

"of such nature, as that, on a new trial, [it] would probably produce an acquittal." Kelly,

---

[8]    The trial began on March 16, 2015, and it is estimated to last approximately eight weeks. The Court does not rely on the fact that none of the officers has yet been convicted of a crime in concluding that the alleged newly discovered evidence would be inadmissible under Rule 404(b).

539 F.3d at 181–82. Accordingly, the Court denies that part of Rodriguez's Rule 33

Motion which seeks a new trial on the basis of newly discovered evidence.[9]

**2.      Rodriguez's Claims Under <u>Brady v. Maryland</u>**

In his Rule 33 Motion, Rodriguez also contends that the Government's failure before trial

to produce the IAD files relating to the officers of the Narcotics Field Unit who were involved in

his arrest violated his due process rights under <u>Brady</u>. Rodriguez also requests discovery "to

determine whether . . . any additional <u>Brady</u> violations" occurred in this case. (Def.'s Rule 33

Mot. 17.) Rodriquez's discovery requests are extensive. (<u>See</u> Mem. Law Supp. Def.'s Discovery

Requests 2–6.) Although Rodriguez did not request <u>in camera</u> review in either Motion, he asserts

in a subsequent filing that, if the Court denies his discovery requests, the Court should, at the

very least, conduct an <u>in camera</u> review of the requested materials. (<u>Id.</u> 1.)

For the reasons set forth below, the Court denies Rodriguez's claims under <u>Brady</u>.

**a)  Legal Standard**

**i.      <u>Brady v. Maryland</u>**

Under <u>Brady</u>, "the suppression by the prosecution of evidence favorable to an accused

upon request violates due process where the evidence is material either to guilt or to

punishment." 373 U.S. at 87. The Supreme Court has stated that "[e]vidence is material only if

there is a reasonable probability that, had the evidence been disclosed to the defense, the result of

---

[9]      Rodriguez has also requested discovery "to the extent that this Court decides that more
information is necessary to decide the newly discovered evidence issue." (Mem. Law. Supp.
Def.'s Rule 33 Mot. 17.) As the Court has determined on the present state of the record that
Rodriguez is not entitled to a new trial based on the alleged newly discovered evidence of police
corruption, Rodriguez has not shown "good cause" for this request. <u>See</u> United States v. Brown,
No. 02-146-2, 2008 WL 510126, at *1 n.1 (M.D. Pa. Feb. 22, 2008), <u>aff'd</u>, 595 F.3d 498 (3d Cir.
2010) (a district court may authorize discovery where a movant shows "good cause," <u>i.e.</u> "where
specific allegations before the court show reason to believe that the [movant] may, if the facts are
fully developed, be able to demonstrate that he is . . . entitled to relief.") (citing <u>Bracy v.</u>
<u>Gramley</u>, 520 U.S. 899, 908–09 (1997)). Accordingly, this discovery request is denied.

the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985); see also Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987). The appropriate remedy for a Brady violation is a new trial. United States v. Isaac, No. 05-576-01, 2014 WL 2048119 (E.D. Pa. May 16, 2014) (citing United States v. Coleman, 862 F.2d 455, 458–60 (3d Cir. 1988)).

Where a defendant suspects that the government has withheld Brady evidence, he may move the court for an in camera inspection of the materials in question. See Ritchie, 480 U.S. at 60; United States v. Dent, 149 F.3d 180, 191 (3d Cir. 1998). To obtain an in camera inspection, the defendant "must at least make a 'plausible showing' that the inspection will reveal material evidence." Ritchie, 480 U.S. at 59 n.15; Riley v. Taylor, 277 F.3d 261, 301 (3d Cir. 2001). Under this standard, "[m]ere speculation is not enough." Riley, 277 F.3d at 301.

### ii.    Post-Trial Discovery

Although Rule 33 does not itself provide a mechanism for discovery in connection with a motion for a new trial, a court may allow discovery where the movant shows "good cause." See, e.g., United States v. Brown, No. 02-146-2, 2008 WL 510126, at *1 n.1 (M.D. Pa. Feb. 22, 2008), aff'd, 595 F.3d 498 (3d Cir. 2010) (applying Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts, which states that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery" while noting that "[t]here appears to be no provision in the Federal Rules of Criminal Procedure for discovery after trial"). Good cause exists "where specific allegations before the court show reason to believe that the [movant] may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy v. Gramley, 520 U.S. 899, 908–09 (1997).

#### b)  Government's Failure to Produce Internal Affairs Department Files Before Trial

Rodriguez argues that the newly discovered evidence of police corruption demonstrates that the Government violated Brady by failing to produce before trial the IAD files relating to the Narcotics Field Unit officers who were involved in his arrest. The Court disagrees.

This Court and the Third Circuit have previously addressed and rejected this claim. See United States v. Rodriguez, No. 07-709-01, 2008 WL 4925010 (E.D. Pa. Nov. 17, 2008); Rodriguez, 489 F. App'x at 530–31. As discussed above, in rejecting this claim in connection with Rodriguez's direct appeal, the Third Circuit concluded that the only relevant IAD files were those that pertained to the open investigations against Officers Betts and O'Malley, and affirmed this Court's decision that Rodriguez had failed to make a plausible showing that those files contained Brady material. See Rodriguez, 489 F. App'x at 530–31. Rodriguez's attempt to relitigate this issue through his Rule 33 Motion is improper. See United States v. Johnson, 405 F. App'x 637, 640 (3d Cir. 2010) (non-precedential)[10] (refusing to allow relitigation of issues raised and decided on direct appeal) (citing United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993)). Nevertheless, the Court addresses the merits of Rodriquez's second request for the IAD files.

Rodriguez has not shown "good cause" for his request that the Government produce the IAD files in question. Bracy, 520 U.S. at 908–09. The newly discovered evidence of police misconduct on which Rodriguez relies is not sufficient to show that the IAD files likely contain Brady material. First, as discussed at length above, there is no evidence of any connection between that newly discovered evidence and Rodriguez's case. Second, the Government has advised the Court that it is aware of its Brady obligations and has fully complied with those

---

[10]     Although not binding on the Court, this Court finds the Johnson decision instructive on this issue.

obligations by reviewing the relevant files to ensure that it does not possess any material exculpatory or impeachment evidence that has not already been turned over to Rodriguez. (Gov't Resp. to Def.'s Request for Discovery 10; Gov't Resp. to Def.'s Rule 33 Mot. 19.) The Court finds no evidence to the contrary in this case. See United States v. Karriem, No. 07-706, 2008 WL 5118200, at *11 (D.N.J. Dec. 4, 2008) ("Prosecutorial review of potential Brady material ordinarily is sufficient absent some exceptional circumstances."); United States v. Walker, No. 05-440-11, 2008 WL 5002937, at *3 (E.D. Pa. Nov. 24, 2008) ("In the typical case where a defendant makes only a general request for exculpatory material under Brady v. Maryland, . . . it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final."). Under such circumstances, Rodriguez has not met his burden of showing that the IAD files are material under Brady, nor has he made a "plausible showing" that an in camera review of those files will reveal material evidence. Riley, 277 F.3d at 301.

Accordingly, the Court denies Rodriguez's claim that the Government violated Brady by failing to produce the IAD files at issue. To the extent that Rodriguez requests an in camera review of those files, that request is denied.

### c)  Rodriguez's Extensive Requests for Further Discovery

Rodriguez also makes broad requests for further discovery in order "to determine whether . . . any additional Brady violations" occurred in this case. (Mem. Law Supp. Def.'s Discovery Requests 1.) In the alternative, he requests in camera review. Because Rodriguez has failed to show "good cause," Bracy, 520 U.S. at 908–09, the Court denies these discovery requests.

The Brady rule did not create "a general constitutional right to discovery" in criminal cases. Weatherford v. Bursey, 429 U.S. 545, 559 (1977). To the contrary, Brady imposes disclosure obligations on the prosecution only where the suppression of material, exculpatory evidence would violate the defendant's due process right to a fair trial. Bagley, 473 U.S. at 675, 682. As discussed above, Rodriguez has offered no basis for believing that the requested discovery contains material evidence under Brady. Without any evidence of a link between the alleged misconduct of these officers and his case, Rodriguez's requests amount to an unauthorized "open-ended fishing expedition." United States v. MacFarlane, 759 F. Supp. 1163, 1168 (W.D. Pa. 1991) ("[T]he prosecutor is not required to make files available to the defendant for an open-ended 'fishing expedition' for possible Brady material.") (citing United States v. Davis, 752 F.2d 963 (5th Cir. 1985)).

Moreover, the Government has repeatedly represented to the Court that it is aware of its Brady obligations and that it has reviewed the materials in its possession in order to determine whether any Brady material exists. (See, e.g., Gov't Resp. to Def.'s Request for Discovery 10; Gov't Resp. to Def.'s Rule 33 Mot. 19, 25.) Having conducted that review, the Government states that it does not possess any material exculpatory or impeachment evidence that it has not already turned over to Rodriguez. The Court has no reason to doubt the Government's representations. See Walker, 2008 WL 5002937, at *3; Karriem, 2008 WL 5118200, at *11.

With respect to Rodriguez's request for an in camera review of the additional discovery materials, the Court concludes, for the same reasons, that he has not made a plausible showing that an inspection of those materials by the Court will reveal material evidence under Brady.

For the foregoing reasons, the Court denies Rodriguez's requests for further discovery. To the extent that Rodriguez requests an <u>in camera</u> review of those materials, that request is denied.

### 3.     Request for Evidentiary Hearing

Rodriguez requests that the Court hold an evidentiary hearing with respect to his claims under Rule 33. An evidentiary hearing is not required where the Court is able to resolve the issues presented by a motion for a new trial pursuant to Rule 33 on the present state of the record. <u>See</u> <u>United States v. Jackson</u>, 427 F. App'x 109, 113 (3d Cir. 2011) (a district court is not required to hold an evidentiary hearing before ruling on a motion for a new trial); <u>Johnson</u>, 405 F. App'x at 640 (same). The Court denies Rodriguez's request for an evidentiary hearing because the record clearly establishes that he is not entitled to relief.

### B.  RODRIGUEZ'S MOTION UNDER 28 U.S.C. § 2255

In the alternative, Rodriguez has filed a Motion pursuant to 28 U.S.C. § 2255 which seeks the same relief as that sought in his Rule 33 Motion. Because Rodriguez raises the same arguments with respect to both Motions, the Court denies Rodriguez's § 2255 Motion in its entirety for the reasons stated above. <u>See</u> <u>United States v. Johnson</u>, 380 F. Supp. 2d 660, 670 n.4 (E.D. Pa. 2005), <u>aff'd</u>, 195 F. App'x 52 (3d Cir. 2006) (noting that "[t]here does not appear to be any difference in the substantive standard for adjudicating <u>Brady</u> claims under Rule 33 or under 28 U.S.C. § 2255"); <u>United States v. Blount</u>, 982 F. Supp. 327 (E.D. Pa. 1997) (applying Rule 33 newly discovered evidence standard in context of § 2255 motion); Def.'s Rule 33 Mot. 20–21 ("The factual and legal analysis for [Rodriguez's] newly discovered evidence and <u>Brady</u> claims are identical, whether presented under Rule 33 or § 2255.").

### 1.      Request for Evidentiary Hearing

Rodriguez requests that the Court hold an evidentiary hearing with respect to his claims under 28 U.S.C. § 2255. Under § 2255, "the question of whether to order a hearing is committed to the sound discretion of the district court." Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). In exercising that discretion, "the [C]ourt must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." Id.; see also United States v. Day, 969 F.2d 39, 41–42 (3d Cir. 1992). The Court denies Rodriguez's request for an evidentiary hearing because the record conclusively establishes that Rodriguez is not entitled to the relief sought in his § 2255 Motion.

### 2.      A Certificate of Appealability Shall Not Issue

A certificate of appealability shall issue only if the petitioner establishes "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also 28 U.S.C. § 2253(c). The Court concludes that Rodriguez has not made such a showing with respect to his § 2255 Motion. Thus, a certificate of appealability will not issue.

### IV.      CONCLUSION

For the foregoing reasons, defendant Stanley Rodriguez's Motions under Federal Rule of Criminal Procedure 33 and 28 U.S.C. § 2255 are denied without an evidentiary hearing.

An appropriate order follows.